**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

**DOCTOR'S TESTING CENTER, LLC II;**
**RON DAVIS,** *PRO SE*
**In His Individual Capacity**

            **Plaintiffs,**

**v.**                         **CASE NO. 4:09-CV-0707WRW**

**UNITED STATES OF AMERICA**
**UNITED STATES DEPARTMENT of**
**HEALTH and HUMAN SERVICES;**
**KATHLEEN SEBELIUS, SECRETARY of the**
**UNITED STATES DEPARTMENT of HEALTH and**
**HUMAN SERVICES; CENTERS for MEDICARE**
**MEDICADE SERVICES; ARKANSAS BLUE CROSS and**
**BLUE SHIELD; PINNACLE BUSINESS SOLUTIONS;**
**ADVANCED MED of MARYLAND;**
**Q2 ADMINISTRATORS, LLC, of SOUTH CAROLINA**

            **Defendants.**

**AMENDED PETITION FOR JUDICIAL REVIEW; PETITION FOR DECLARATORY**
**AND INJUNCTIVE RELIEF; AND MONEY DAMAGES[1]**

Comes the Plaintiff, Doctor's Testing Center, LLC II, by and through counsel, Max M.

Horner Jr., HORNER LAW FIRM, and Ron Davis, *Pro Se*, pursuant to Federal Rules of Civil

Procedure 15, and for their Amended Petition for Judicial Review; Petition for Declaratory and

Injunctive Relief; and Money Damages[2], states:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this action; personal

jurisdiction over the Defendants; and Venue is proper in this district for Judicial Review of final

decisions of Department of Health and Human Services pursuant to 42 U.S.C. 405(g), as

---

[1] Plaintiffs' will Underline amended portions of their Petition for easier identification of said amendments.
[2] Plaintiff is incorporating the original exhibits (DOC 1-2 and 1-3) as if attached to this Amended Pleading.

incorporated by 42 U.S.C. §§ 1395ii (1994),42 U.S.C. 405.1004(c), and 42 U.S.C.

405.1006(c)(i); for Declaratory and Injunctive relief from Defendants' arbitrary and unlawful

conduct, pursuant to 5 U.S.C. §§ 701-706; and for Money Damages pursuant to the Federal Tort

Claims Act, codified 28 U.S.C. §§ 1346(b) and 2675.

## PARTIES

## PLAINTIFFS

2.      DOCTOR'S TESTING CENTER, LLC II, (DTC II), is a Physician's Group, as

defined by the Department of Health and Human Services, (DHHS), organized and operating

under the laws of the State of Arkansas and has been at all times relevant to the complaints

herein. On November 11, 2002, DTC II received their Medicare Group provider number, 5C652;

and Doctor's Hearing Center LLC II (DHC II), an Independent Diagnostic Testing Facility

(IDTF) also received their Medicare Provider Number, 5C724; and both have operated as a Part

B provider for DHHS, since that time.[3]

3.      RON DAVIS, (DAVIS), a Certified Technician, as defined by Defendant DHHS,

is the co-founder, a member and a partner of DTC II and DHC II for which he does have

delegated authority.[4]  DAVIS has material interests and issues inextricably intertwined with the

facts involved in this review, separate and distinct from DTC II's general partner, Richard

Hayes, MD, who will be DTC II's representative at any and all hearings based on this Petition.

DAVIS is a resident of Lonoke, County Arkansas and a citizen of the United States of America,

and has been at all times relevant to this cause of action.

4.      During the relevant time period DTC II, the Physician's Group; DHC II, the

IDTF; through the actions of  individual physicians, DAVIS and others, provided covered,

---

[3] Although Doctor's Hearing Center is mentioned by reference, they are not Plaintiff's in this petition, since all
claims at issue were submitted through the Physician's Group # 5C652
[4] Delegated Authority as defined by DHHS/CMS form 855B.

medically necessary, Medicare Part B services to Medicare beneficiaries and billed for same according to rules promulgated by DHHS through its agent, the Center for Medicare and Medicaid Services, (CMS), pursuant to DHC II and Plaintiff DTC II's contract with , Arkansas Blue Cross and Blue Shield, and its affiliates and subsidiaries, (Exhibit 1), have been injured and continue to be injured by Defendants' <u>malicious and illegal</u> conduct as a result thereof.

## DEFENDANTS

5.    All of the substantive practices, policies and procedures; rules, regulations, lack thereof, or consequences for failure to comply with its own promulgated rules, regulations and policies are established, implemented, monitored and ratified by Defendants themselves.  Local and Regional subsidiaries, or affiliates, of DHHS do not function as independent corporate entities; they have an agency, or instrumentality relationship with Defendant, DHHS, through the Defendant Secretary for DHHS, Kathleen Sebelius; and function in that capacity under Defendants' direction and control with respect to the practices, rule applications and conduct at issue in this case.  Similarly, all actions performed, or omitted, by Defendants' employees were within the scope of their employment, at all times relevant to the issues in this case.

6.    Whenever this Complaint alleges that any Defendant did any act or thing, it is meant that DHHS, its Secretary, all government agencies, or instrumentalities, under the direction, or control of DHHS, any corporation, its directors, officers, agents or employees, or the directors, officers, agents or employees of its subsidiaries or affiliates performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of, that Defendant; the local carrier is Arkansas Blue Cross Blue Shield (BCBS).

7.      Defendant, United States Department of Health and Human Services, (DHHS), is a Department of the United States Government and operates pursuant to the laws of 42 U.S.C. §§ 401 et seq., as incorporated by 42 U.S.C. §§ 1395 et seq. (the Act).

8.      Defendant, Kathleen Sebelius, is named in her official capacity as the Secretary of DHHS.

9.      Defendant, Centers for Medicare Medicaid Services, (CMS) is a Division of DHHS.  It functions as the operational arm of Medicare parts A and B, and Medicaid Services. It provides direction to all carriers in the United States.  It is authorized to promulgate rules, regulations, and procedures, (the "Rules"), in accordance with the Administrative Procedure Act, (APA), and to enforce those Rules.

10.     Defendant, Arkansas Blue Cross and Blue Shield, (BCBS), is an Arkansas corporation with its corporate headquarters located in Little Rock, Arkansas. It is the parent corporation of Pinnacle Business Solutions, doing business as CMS Pinnacle. BCBS is the primary carrier for Medicare, part B provider services in Arkansas. BCBS through Pinnacle Business Solutions and other "independent" entities[5] is responsible for all of the reviews, redeterminations and payment, or nonpayment, decisions on Medicare claims[6] submitted by Plaintiff, DTC II.  BCBS, Pinnacle Business Solutions and each of the independent entities are responsible for forwarding any and all patient medical case files submitted by the provider, Plaintiff, DTC II, to the next reviewing body. (Exhibit 7-I)  Each Defendant is also responsible for maintaining the confidentiality of the contents of those medical records. (Exhibit 7-III)

11.     Defendant, Pinnacle Business Solutions, does business as CMS Pinnacle, (CMS-AR), a wholly owned subsidiary of BCBS, the local carrier.  BCBS provides Medicare health

---

[5] Including Defendants, AdvanceMed and Q2
[6] Plaintiff claims are for medically necessary, services to qualified Medicare beneficiaries, covered by part B

service coverage to the public on a statewide basis in Arkansas by offering and operating CMS

Medicare, part B health care plans, for DHHS through its subsidiary CMS-AR, in Arkansas.

12.     Defendant, AdvanceMed of Maryland, (AdvanceMed), is a Maryland corporation

doing business in Tennessee.  They perform independent payment determinations in pre-payment

and post-payment reviews of beneficiary claims[7] through a contract with CMS.

13.     Defendant, Q2 Administrators, LLC, (Q2), is a South Carolina Limited Liability

Company, doing business in Ohio.  They perform independent reviews of unfavorable, or

adverse, provider determinations and beneficiary redeterminations issued by local carriers,

including BCBS, through a contract with CMS, and carried out by its wholly owned subsidiary,

CMS-AR.

14.     At all relevant times, all Defendants were the agents, or insturmentalities of

DHHS, and in committing the acts alleged herein they acted within the scope of their agency

status, with the consent, permission, authorization, acquiescence and knowledge of the others,

and in furtherance of both their interest and the interests of the other Defendants they aided and

abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein

were ratified and approved by DHHS and CMS entities even though they may have been

contrary to CMS policy.

## FACTUAL ALLEGATIONS AGAINST ALL DEFENDANTS

## I.  DISMISSAL OF Q2 CASE #1-356371621

15.     DTC II, submitted claims for medically necessary healthcare services provided to

Medicare patients eligible for services under Medicare part B, (Claims); performed between

9/10/07 and 11/12/07, to CMS's Agent, AdvanceMed for "pre-payment" review; under their

Group Provider Number 5C652, totaling $21,070.50. (Exhibit 2-I)

---

[7] In pre-payment reviews, DTC II, the provider has standing to appeal for the beneficiary

16.     DTC II provided the carrier with copies of each patient's medical file by date of service, as required by the pre-payment review process letter received by DTC II, from CMS-AR.

17.     On January 1, 2008, CMS's pre-payment review agent, AdvanceMed, denied DTC II payment for Claims performed and noted in part the requested patient medical files submitted to AdvanceMed, as requested by CMS.  (Exhibit 3)

18.     On March 20, 2008, DTC II, timely filed its appeal, with a call for the entire record, of the alleged AdvanceMed pre-payment review decision to CMS-AR for redetermination, as required under the Rules. (Exhibit 4)

19.     On August 20, 2008, DTC II, timely filed its appeal of the alleged CMS-AR redetermination and called for the "entire record"[8] to be forwarded to Q2 for an independent review of the entire record.  (Exhibit 5)

20.     DTC II, complied with the Rules at every level throughout this administrative process, as required; however, the Defendants have and continue to willfully and maliciously disregard the Rules in such a way as to inure to their benefit.[9]

21.     The total amount of the Claims originally submitted by DTC II, to Advance Med was $21,070.50 (Exhibit 1-I); CMS-AR made its redetermination based on the ICN #'s[10] and not the patient medical records as required by the Rules. As a result of CMS-AR's <u>malicious and illegal conduct</u>, only $5,199.00 was allegedly reviewed. (Exhibit 1-II); the unfavorable Q2 decision and the adverse decision based on CMS-AR's alleged redetermination were issued without either Defendant reviewing any of the patient medical records submitted to

---

[8] To include all patient medical files originally submitted to AdvanceMed and allegedly sent to CMS-AR for redetermination.
[9] See additional facts in discussion of ALJ Decisions
[10] Internal Control Number

AdvanceMed, <u>as required by the Rules</u>, in making their respective decisions.  <u>This violated</u>
<u>Plaintiffs' Constitutional and administrative Due Process Rights</u>.

22.     DTC II, timely appealed the Q2 decision to the Administrative Law Judge (ALJ).
On March 9, 2009, DTC II made another call for the records, requested signatures on the
decisions and for a subpoena Duces Tecum to be issued.  (Exhibit 6-I, II)  The claims allegedly
re-determined by CMS-AR, and reviewed by Q2 were in the amount of $5,199.00, (Exhibit 2-II),
not the $21,070.50.  (Exhibit1-I)

23.     The ALJ in an Order issued June 30, 2009, subsequently dismissed claims in the
amount of $1,805.00 from the Q2 decision.  (Exhibit 1-III)

24.     The ALJ also inadvertently dismissed the remaining $14, 066.50 in Claims
submitted to AdvanceMed, because no re-determination was done by CMS-AR, of the remaining
claims contained in the patients' medical files originally submitted to AdvanceMed. (Exhibit 9-
III)(Exhibits 1-III, IV)

## II. REVIEW OF UNFAVORABLE DECISION OF Q2 CASE # 1-329670411

25.     DTC II, filed a number of Claims through its Physician's Group, Medicare
provider number, 5C652, using Physician Modifiers, between March, 2007 and September 2007.
CMS-AR, applying LCD AC-02-027,[11] denied DTC II's use of the Physician Modifiers used in
those Claims. (Exhibit 8-I)

26.     DTC II, timely filed for an appeal of the CMS-AR determination, requesting Q2
to determine if a Doctor's Group could submit Claims using Physician's Modifiers or were they
prohibited by LCD 02-027, as stated in the CMS-AR determination. (Exhibit 8-I)

---

[11] LCD AC-02-027 is a local carrier determination policy that governs Independent  Licensed Audiologists, not
Physicians or Physician Groups

27.     Q2 correctly found that DTC-II could submit Claims, using Physician Modifiers and were not governed by LCD 02-027, reversing the CMS-AR determination, which was the only issue before Q2[12]; however, Q2, apparently on its own initiative, issued an Unfavorable Decision denying DTC II's correctly submitted Claims because DTC II did not submit any patient medical records on which it could make its decision, which was not an issue before Q2.

### III. REVIEW OF ALL DECISIONS IN CASE ALJ#1-356997501

28.     On November 22, 2007, DTC II, timely filed its appeal of the Q2 decision to the Office of Medicare Hearing and Appeals. (OMHA) (Exhibit 8-I)

29.     Prior to the hearing, all parties were notified of the time and place of the hearing; the ALJ and DTC II made a call for the entire record to be brought forward from each of the Defendants as allowed under the Rules.  Additionally, DTC II, also requested the ALJ issue and serve on each Defendant, a subpoena Duces Tecum ordering Defendants  to provide the ALJ with all of the medical records and/or other information they relied upon in making their determinations[13], as well as all other records or documents submitted by DTC II. (Exhibit 6-I, II) None of the Defendants complied with the ALJ subpoenas, or requests for the records by the ALJ and DTC II.

30.     On May 27, 2009, an in person hearing was held Gerald Foulds, an ALJ with the Office of Medicare Hearing and Appeals, (OMHA), on case ALJ # 1-356997501, which was an appeal of the Q2 case 1-329670411, at its offices in Miami Florida.

31.     At that Hearing, the ALJ merged Q2 case 1-329670411 with another DTC II appeal of a second Q2 decision, case # 1-35637162 and heard testimony and took evidence of

---

[12] This would have resulted in a FAVORABLE decision for DTC II by Q2.
[13] It should be noted that this was DTC II's third call for the record that was denied or ignored.

both cases in case ALJ # 1-356597501. (Exhibit 8-II)  The ALJ combined these cases over the DTC II's written objection. Exhibit 6-II)

32.     Plaintiff DAVIS appeared for DTC II, and was the only party present at the May 27, 2009, ALJ hearing.  Defendants CMS-AR, BCBS, AdvanceMed, Q2, CMS, DHHS did not appear for the hearing.

33.     Because Defendants failed to appear at the hearing, ALJ Foulds allowed his paralegal, Mr. Richard Werblow, stand in for  the Defendants during the proceedings.

34.     There were no records, previously submitted by DTC II, sent forward from any Defendant, despite the fact that DTC II provided various Defendants complete sets of everything, but medical records, on four separate occasions.  Each time they were sent by registered mail, return receipt requested and were signed for by Defendants' respective representative employee.

35.     Defendants provided no documentary, or testimonial, evidence with which to make any decisions in this case.  DAVIS, who did appear for DTC II at the hearing, brought his own complete set of replacement records, including medical records, that had been previously delivered to Defendants, for comparison purposes.

36.     ALJ Foulds had no documentation to support any adverse decision contained in either of the Q2 appeals and had to rely solely on DTC II and Davis' evidence in making his decisions.

37.     Defendants' failure to either not produce the records in question, ignoring the numerous demands to forward the records to the appropriate reviewing authority, or not responding to, the "call for the record", to include patient medical records.[14] (Exhibits 4, 5, 6-I, 6-II)

---

[14] Plaintiff, DTC II, submitted two complete sets of medical records each, to AdvanceMed and OMHA (the ALJ)

38.     Although all of the appeals were combined and heard under ALJ appeal #1-35697501, the ALJ issued three separate decisions, which are the bases of this action. (Exhibits 9-II, III, IV)

39.     Q2 case 1-329670411, related to whether the DTC II Physician's Group, was allowed to use Physician Modifiers, or prohibited by LCD AC-02-027, (a local carrier determination policy governing Independent Audiologists).  Additionally, whether the Unfavorable decision, based on Plaintiff DTC II not providing any medical records to Q2, absent a written request by BCBS or Q2 for the records, is inappropriate under the Rules of DHHS. (Exhibit 7-II)

40.     Both Q2[15] and the ALJ in case 1-356597501, correctly found in their decisions, that a Physician's Group is governed by CMS transmittal B-01-28, not LCD AC-02-027, allowing the use of Physician Modifiers.  (Exhibits 6-II, 9-I)

41.     However, the ALJ decision included many factual errors and was poorly worded in such a way that instead of Defendants simply remitting the fees owed to DTC II, as intended, they have begun sending DTC II EOB's[16] demanding DTC II refund payments received for procedures that it had already performed, been approved for and paid.  This requires DTC II start the administrative process all over again.[17]

42.     The third decision in ALJ case #1-356597501, published June 30, 2009, (Exhibit9-IV), incorrectly found that DTC II, did not submit medical records to BCBS, or Q2; however, the Rules prohibit DTC II from submitting medical records to BCBS, or Q2, unless and until BCBS, or Q2, requests the medical records, in writing, from DTC II and allows them forty-five (45) days to comply with the written request. (Exhibit7-II)  The record is void of any

---

[15] In Q2 appeal  case #1-239670411
[16] Explanation of Benefits
[17] Since the June 30, 2009 ALJ decision, DTC II has had to begin four new appeals

evidence that any request, written or otherwise, was made by BCBS, or Q2, for medical records

from DTC II.  Absent evidence to the contrary, the ALJ should have reversed Q2 and issued a

favorable decision for DTC II.

43.    The second decision, also dated 6/30/09 dismissed in part claims in the Q2 case #

1-35637162 , under ALJ # 1-2356597501.  It is not subject to further administrative appeal. DTC

II has exhausted it administrative remedies regarding this decision; and therefore the issues in

controversy are ripe for consideration by this Court and form the basis for this petition.

44.    CMS-AR never received the patient medical records from AdvanceMed, despite

DTC II's call for the record, which resulted in Plaintiff not receiving rederminations on most of

the individual Claims submitted, as required by the Rules, by date of service, including

additional Claims submitted for services provided for the same patients that day, for which

funding was also being withheld, Claims and patient medical records were lost, or not noted on

the redeterminations given by CMS-AR, except by CMS Redetermination Specialist Jamie

Bodkins.

45.    DTC II provided notarized statements in their appeal to Q2 #1-35637162, noting

these irregularities and deficiencies on every patient, for every claim we initially submitted to

AdvanceMed; the same patients, by date of service, that CMS had called for in its original pre-

payment review letters.

46.    The unfavorable redetermination by BCBS's carrier agent CMS-AR, could not

have been made by looking at the patients' medical records submitted by DTC II in their

AdvanceMed prepayment claims review.

47.     It is DTC II's belief and it therefore alleges that its call for the record, returning

patient medical files from AdvanceMed back to their carrier, CMS-AR did not occur, as required

by the Rules ; therefore, Defendants' egregious and numerous violations of the Rules has

violated DTC II's right to due process, both administratively and Constitutionally.

48.     DTC II timely appealed to Q2 for an independent review, pursuant to the Rules.

Additionally, DTC II made a third and separate call for delivery of all records in the possession

of AdvanceMed and CMS-AR to be delivered to Q2.

49.     Q2 never received any patient medical files, or other records from CMS Pinnacle,

or AdvanceMed.  DTC II then had to deliver two complete sets of filing records and notarized

statements on each patient's file directly to Q2.[18]  Although Q2 had all the necessary information

needed in making a favorable decision, regarding the one issue on appeal,[19] and incorrectly made

an unfavorable decision against DTC II, on that issue.  The basis for Q2's adverse decision

against DTC II stated a new, completely unrelated reason, again, seemingly created "out of

whole cloth."

50.     DTC II timely appealed Defendant Q2's adverse decision to the ALJ.  DTC IIs'

made a fourth and separate call for all the records from CMS-AR, AdvanceMed and Q2.

Additionally, the ALJ out of Miami Florida, Gerald Foulds, made independent requests for the

same Defendants to deliver the record forward for the May 27, 2009 hearing.

51.     During that hearing, DTC II reviewed the records submitted by Defendants

BCBS, CMS-AR, AdvanceMed and Q2, at the request of the ALJ, along with a representative of

the ALJ's office.

52.     DTC II previously submitted thirty-seven patient medical files and fifteen 1" to 5"

three-ring binders in the previous five reviews by AdvanceMed, CMS-AR and Q2; no patient

files or binders were at the ALJ office prior to DAVIS' arrival.

---

[18] Q2 apparently "lost" the first set delivered by DTC II, which sent a second set for review.
[19] Whether a Physician, or non-physician personnel, are governed by LCD AC-02-027, when operating in a
Physician's Group

53.     DTC II resubmitted all information, including patient medical files and all the binders, with all claims, for every date previously called for under the CMS-AR review to the ALJ, for the record. Additionally, DTC II submitted copies of all the binders which were missing, to the ALJ, when DAVIS arrived at the hearing.  All the records DTC II submitted at the ALJ hearing were admitted without objection.

54.     Defendants' actions and omissions have violated DTC IIs' administrative and constitutional right to due process, at every level of the Defendants' "pre-payment review," appeals, which as of the filing of this Complaint has taken a total of 1011 days for both Q2 cases, which is 531 days more than is allowed by the Rules of DHHS.  (Exhibit 10-I, II)

55.     This malicious and illegal use of the Rules continue to deny DTC II of its rightful payments; by denying claims based on Rules that have never applied to it; fictional reasons used as the basis for denying DTC II payments; failing to make required re-determinations of valid claims; and manipulating the system to cause intentional delays of payments rightfully owed DTC II.

55.     DTC II continues to be irreparably harmed, because each time Defendants engage in this malicious and illegal conduct,[20] Defendants send out copies of the decisions that have been nothing short of slanderous and libelous in nature, based on decisions that Defendant knew or should have known were unfounded and erroneous because they were not based on the patient's files or DTC II's submittals, which as discussed above, they have likely never reviewed.  This conduct negatively affects DTC II directly and acts as a "poison pill" to DTC II's patient base, which is largely composed of patients on Medicare.

---

[20] Plaintiff DTC II has received favorable ALJ opinions relating to local carrier determination rules applied to it from Oklahoma and Baltimore, which have been repeatedly ignored by Defendants.

56.     During this process alone, DTC II has had to close a number of companies and partnerships, which will result in patients not receiving medically necessary treatment, that could be fatal in some situations, and harmful in most situations, due to falls or other hearing and balance related issues, that could have been prevented absent Defendants repeated and malicious unlawful acts.

57.     DTC II asserts that the purpose of the "administrative exhaustion" requirement would not be served by requiring further administrative procedures because the reasoning asserted by the Defendants relies on rules that do not govern, or issues that are unrelated to, Physician's Groups. In this, the ALJ found favorably, for the DTC IIs, in a decision the Defendants continue to ignore.

58.     DTC IIs are entitled to judicial review of all three decisions by the ALJ, despite their failure to exhaust all administrative remedies of one of the ALJ decisions, based on the 8th Circuit's Constitutional exception to that statutory requirement.[21]

## RELIEF SOUGHT

59.     DTC II, realleges and incorporates paragraphs 1-58 above, as if set forth fully herein.

61.     This claim for review arises under 42 C.F.R. §§ 405.1004(c), 42 C.F.R. §§ 405.1006(c)(i), 42 U.S.C. §§ 401 et seq., more specifically 42 U.S.C. 405(g), as incorporated by 42 U.S.C. §§ 1395ii (1994), which allows the Court to affirm, modify or reverse the findings of the ALJ based on the pleadings and a transcript of the record, to include all evidence submitted by the parties. This claim for Declaratory and Injunctive Relief arises under 5 U.S.C. §§ 701-706, as set forth below, to prevent Plaintiffs from suffering further financial and due process

---

[21] *Clarinda v. Department of Health and Human Services*, 100 F.3d 526(1996)(internal citations omitted)

violations.  This claim for money damages in the amount of $14,066.50 arises under the Federal

Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2675.

62.     That Defendants be temporarily and permanently enjoined from taking any further

malicious and illegal administrative actions against DTC II, members, unit holders or affiliates,

as it relates to Defendants misapplication of Rules and use of administrative delay tactics to

prevent Plaintiffs from being immediately and timely compensated for medically necessary

healthcare services provided by the Physician's Group to Medicare Part B patients, pursuant to

the parties' contracts.[22]

63.     As set forth, Defendants have violated the Due Process Clause of the United

States and 42 U.S.C. §§ 401 et seq.; and will continue to do so in the future.

64.     Enjoining the Defendants from committing repeated process violations in the

future and/or declaring their invalidity is appropriate as Plaintiffs have no adequate remedy at

law, and will, as set forth in paragraphs 54-57 above suffer immediate and continuous irreparable

harm in the absence of the Court's declaratory and injunctive relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff's pray this Court GRANT their motion to review all three decisions of

the ALJ, issued on June 30, 2009; Declaratory judgments regarding previous ALJ decisions that

are being maliciously and illegally ignored by Defendants; findings of fact that they have

complied completely and explicitly with DHHS and CMS rules pertaining to a Physician's

group; findings of fact that it was the responsibility of BCBS or Q2 to call for the records they

want to review, not DTC II;  that lack of  any evidence to the contrary, makes the ALJ basis for

its adverse decision baseless and therefore moot; correct the language in the favorable decision to

---

[22] DHC/DTC also has appeals pending in Oklahoma and Missouri, involving Defendants' flagrant misapplication of the same Rules and Due Process violations that are the subject of this Review

accurately reflect the evidence presented in the May 29, 2009, hearing transcript; that the Claims

unpaid by Defendants are the result of CMS-AR's failure to make a redetermination because

they did not have any patient medical records, in conjunction with DTC II's call for the records,

to make a redetermination; <u>award damages</u> that DTC II should be paid, as they were innocent in

<u>CMS-AR's</u> failure <u>to make a redetermination based on the records delivered to AdvanceMed</u>;

that Defendants be enjoined from taking any further action to delay the immediate and timely

payment of the medically necessary procedures, performed in conformity with the Rules

regulating a Physician's group; that Defendants' issue payment to DTC II within 10 days of this

Court's Order, including any and all interest that has accumulated based on Defendants delays;

for attorney fees; and for all other just and proper relief to which they are entitled.

## HEARING REQUEST

DTC II requests a hearing on all issues so triable as a matter of right.


Respectfully Submitted,

Richard Hayes, MD, for Plaintiff DTC II


_____

Respectfully Submitted,

by: <u>/s/ Max M. Horner Jr.</u>
    Max M. Horner Jr. #2001067
    HORNER LAW FIRM
    2227 West Main Street, Suite 3
    Jacksonville, Arkansas 72076
    501-985-1313/501-985-1136 fax
    hornerlaw@att.net

## **CERTIFICATE OF SERVICE**

I, Max M. Horner Jr., Attorney for the Plaintiff, hereby certify that on December 7, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Chet Roberts            cxroberts@arkbluecross.com

Shannon Smith           Shannon.smith@usdoj.gov

I, Max M. Horner Jr., hereby certify that December 7, 2009, I mailed the foregoing document and a copy of the Notice of Electronic Filing (NEF) by U. S. Mail to the following non-CM/ECF participant:

Janie W. Fenton
Arkansas Blue Cross Blue Shield
Post Office Box 2181
Little Rock, AR 72203-2181

                                        /s/ Max M. Horner Jr.
                                        Max M. Horner Jr.